# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 20-0781V

|  |  |
|---|---|
| RENEE BYNDLOSS,<br><br>                      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                      Respondent. | Chief Special Master Corcoran<br><br><br>Filed: May 16, 2024 |

*Edward M. Kraus, Kraus Law Group, LLC, Chicago, IL,* for Petitioner.

*Ryan Nelson, U.S. Department of Justice, Washington, DC,* for Respondent.

### FINDINGS OF FACT, CONCLUSIONS OF LAW,
### AND TRANSFER ORDER – SPECIAL PROCESSING UNIT[1]

On June 26, 2020, Renee Byndloss filed a Petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). ECF No. 1. Petitioner alleges that she received tetanus-diphtheria-acellular pertussis ("Tdap") vaccine and measles-mumps-rubella ("MMR") vaccines on May 7, 2018, *bilaterally*, and further alleges that these vaccines caused her to suffer either *two* concurrent shoulder injuries related to vaccine administration ("SIRVA"), or a SIRVA from the Tdap vaccine and a causation-in-fact injury from the MMR vaccine.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Based on the record and the parties' filings, I find preponderant evidence supports the conclusion that both vaccines were likely administered in Petitioner's left arm, with the MMR vaccine administered subcutaneously.

## I.    Procedural History

Well after the case's filing and activation, Respondent filed his Rule 4(c) Report in which he opposed compensation. Rule 4(c) Report (ECF No. 29). On December 2, 2021, I ordered any additional evidence (from Petitioner) and sequential briefing on facts that were disputed between the parties. Scheduling Order (ECF No. 30). Petitioner completed her filings on January 31, 2022. *See* Exs. 14 – 16 (ECF No. 32); Memorandum in Support of her Claim of Bilateral Shoulder Injuries (ECF No. 34) ("Brief"). On April 12, 2022, Respondent filed a Response (ECF No. 36). The matter is ripe for adjudication.

## II.    Authority

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or

establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g., tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

---

underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

## III.  Evidence

I have reviewed all submitted evidence, including the medical records and affidavits, Petition, the Rule 4(c) Report, and both parties' briefs. The following section focuses on the evidence most relevant to the issues to be resolved.

### A. Medical Records

Petitioner was born in 1968. She last saw primary care physician Natalie Karishev, M.D., in September 2014. Ex. 6 at 1; *see also* Ex. 13 at 11. On April 3, 2018, she established care with Dennis Townsend, M.D., at the Milvia Family Medicine clinic. Ex. 3 at 40.[4] No musculoskeletal complaints or findings were noted. *Id.* at 40 – 42.

At a May 7, 2018, follow-up appointment, Dr. Townsend conducted well-woman and gynecological exams; reviewed prior lab work; entered a gastroenterology referral; and noted that Petitioner would receive two vaccines: "MMR VAC LIVE VIRUS SQ" and "TDAP VAC 10+ YO *ADACEL IM." Ex. 3 at 37 - 40. The actual vaccine administration records are replicated below:

| Immunizations as of 11/7/2018 | | | | Never Reviewed |
|---|---|---|---|---|
| Name | Date | Dose | VIS Date | Route |
| IMMUNIZATIONS UP TO DATE | 8/30/2014 | -- | -- | |
| MMR | 5/7/2018 | 0.5 mL | 2/12/2018 | Subcutaneous |
| Site: Tricep Left | | | | |
| Given By: Jordan, Jennifer | | | | |
| Comment: DILUENT LOT#N029881 EXP5/24/20 NDC#0006-4309-01 VERFIED BY DENNIS TOWNDEND MD | | | | |
| TDAP (Adacel) 10-64 YRS | 5/7/2018 | 0.5 mL | 2/24/2015 | Intramuscular |
| Site: Deltoid Left | | | | |
| Given By: Jordan, Jennifer | | | | |
| Comment: VERIFIED BY DENNIS TOWNSEND MD | | | | |

Ex. 4 at 131 – 32. Thus, the initial vaccine record suggests both vaccines were administered in Petitioner's *left* arm – and that they were not administered in the same manner.

---

[4] This record lists Petitioner as still being a "patient of Natalie Karishev." Ex. 3 at 40.

The next contemporaneous documentation[5] is from over three months later, on August 14, 2018, when Dr. Townsend evaluated Petitioner for a chief complaint of "Extremity pain: x2 months off and on localized in biceps… improve[d] with massage therapy." Ex. 3 at 33. The history of present illness elaborates:

> [Petitioner] reports intermittent bilateral pains in both upper arms over the last 2 months. Was equal initially. No[w?] worse on the right. Varies in intensity. No particular triggers identified. Massage has helped. No medication treatments. Hasn't seen any swelling, bruising, or redness. [Petitioner] also reports that [she] started doing some exercises after the pain started (using rowing machine) and that has helped some. No similar problem in the past. Discomfort seems to be in the bilateral triceps areas.

*Id.* Dr. Townsend's exam elicited pain in the upper arms, seemingly in the triceps, upon testing of range of motion ("ROM") particularly external rotation. *Id.* at 34. Dr. Townsend assessed the pain to have a musculoskeletal nature but unclear etiology. *Id.* He recommended stretching, non-prescription pain medications, and following up as necessary.

On September 1, 2018, Petitioner emailed Dr. Townsend:

> I'm still feeling this strange pain in my upper arms. It's consistent in varying degrees. Something as simple as wiping a table or closing a window is difficult and painful. It's sometimes accompanied with a burning ball of pain in the center of my back and/or soreness in my chest and shoulders.

> This is not a result of any exercise. In fact, I started using a rowing machine and icy hots to alleviate the pain (it helped somewhat).

> I'm becoming increasingly concerned. I'd like to investigate this further somehow. Should I see some type of specialist? Tests? Recommendations?

Ex. 5 at 2. Petitioner also noted her preference that she would "rather not take more time off work without making any progress." *Id.* at 1. In Dr. Townsend's absence, his colleague Samara Nebenzahl, M.D., entered a referral to the Alta Bates Summit Medical Center

---

[5] As noted further below, Petitioner saw her established massage therapist in June and August 2018, but no contemporaneous documentation of those massage session exists.

Sports Medicine Clinic for occupational therapy ("OT"). *Id.* Petitioner was formally evaluated and approved for OT on September 10, 2018. Ex. 4 at 7 - 8.

At the October 4, 2018, OT initial evaluation/ first session, therapist Christine Gerbelot, recorded Petitioner's "history of bilateral arm pain beginning 5/7/2018 following *bilateral* arm vaccinations… arms were sore after injections, and pain has continued x5 months." Ex. 4 at 5 (emphasis added). She had decreased ROM, decreased strength; and pain with motion (rated at 8/10). *Id.* She was also having difficulty with dressing, bathing, and all housework, but "no problem at work or tabletop activity." *Id.* The therapist planned to "focus on pain control and regaining full motion and use of arms" over the course of 10 formal sessions, to occur once or twice per week. *Id.* at 4 – 4, 10 – 17.

Petitioner attended further OT sessions on October 10, 12, 22, 26, and 30, 2018. Ex. 4 at 42 – 94. A November 1, 2018, progress note (coinciding with the seventh OT session, *see* Ex. 4 at 98 - 100) reports that her ROM remained limited and painful, and she required family members' assistance to take on/off clothes. *Id.* at 95 – 96. Petitioner's progress was "slow and at times variable." *Id.* at 96. The therapist recommended an additional 10 formal sessions and use of a TENS unit at home (first used during the October 26th, OT session) if approved by her physician. *Id.* at 77, 96.

At a November 1, 2018, appointment, Dr. Townsend recorded Petitioner's history of "bilateral arm pain since obtained vaccines 5/17/18." Ex. 3 at 28. She reported:

> Ongoing arm pains bilaterally. This started about 6 months ago after getting routine vaccinations (Tdap and MMR – one in each arm). That is the only thing she can think of that has changed.

*Id.* at 29. On exam, both upper arms were tender and seemed warm to the touch, and both shoulders displayed significantly decreased ROM (both active and passive). *Id.* Dr. Townsend was again unsure of the etiology; he suspected complex regional pain syndrome ("CRPS") and recommended a pain management consultation. *Id.* at 30.

Dr. Townsend also approved the plan for a TENS unit, and for further OT. Ex. 4 at 117 – 19. Petitioner attended just two further OT sessions on November 5 and 7, 2018. Ex. 4 at 112 – 14, 128 – 30.[6] On November 27, 2018, Dr. Townsend wrote a letter

---

[6] The OT administrative discharge dated April 12, 2019, provides that by the last session on November 7, 2018: "[Petitioner] had been shown HEP [home exercise program] and was able to demonstrate on [her] own at last visit. Visits were never rescheduled by [Petitioner]." Ex. 4 at 114 – 15. Petitioner later recalled that she stopped attending formal OT due to the cost, but she maintained her HEP. Ex. 8 at ¶ 11; *accord* Ex. 3 at 7, 18, 21 (later pain management records).

restricting her from "any lifting or overhead work with her arms until further medically cleared." Ex. 9 at 1.

At a December 10, 2018, initial evaluation, pain management specialist Sepehr Rejai, M.D., recorded Petitioner's history that her "bilateral shoulder pain began on May 7, 2018, after [MMR and Tdap] vaccinations in the deltoids. She experienced a few days of excepted soreness after the vaccination[s], but then had persistent dull, deep, achy, pain." Ex. 3 at 22. A physical examination found that both shoulders had decreased ROM, pain, positive Neers and Hawkins tests, and tenderness at the coracoid and biceps. *Id.* at 26. Those findings were concerning for rotator cuff arthropathy/ subacromial bursitis versus adhesive capsulitis. *Id.* at 27.

On December 17, 2018, an MRI of the *right* shoulder showed mild tendinosis, labral degeneration with tearing, mild tenosynovial fluid and tenosynovitis along the bicipital groove, a small glenohumeral joint effusion with synovitis, and a small amount of subacromial subdeltoid bursal fluid. Ex. 3 at 53 – 54. That same date, an MRI of the *left* shoulder showed mild tendinosis, mild tenosynovial fluid and tenosynovitis, labrum degeneration with tearing, and a "[m]ild increased T2 signal within and around a mildly irregular inferior glenohumeral ligament with attenuation of the fibers at its humeral insertion." *Id.* at 56 – 57.

At a December 20, 2018, follow-up, Dr. Rejai summarized that the MRIs "show[ed] rotator cuff tendinosis, bilateral labral tears, and evidence of adhesive capsulitis," for which he suggested orthopedic consultation and surgical intervention. Ex. 3 at 20 – 21.

On January 28, 2019, orthopedic surgeon Robert Alfred Eppley, M.D., initially evaluated Petitioner's chief complaint of "bilateral shoulder pain post MMR/Tdap vaccines… onset after she received vaccine shots in both shoulders on 5/7/18. She is right-hand dominant… [S]ince her vaccinations, she has significant pain and stiffness that flare up intermittently." Ex. 1 at 1. Dr. Eppley recorded that on exam, both shoulders had identical findings of "Pain at ends of motion. 30% total rotation. 90 elevation. Good strength 3x." *Id.* at 2. After reviewing the MRIs, he offered a diagnosis of bilateral adhesive capsulitis, which qualified for surgical intervention. *Id.* at 2 – 3.

Three days later, on January 31, 2019, Dr. Rejai administered bilateral glenohumeral joint injections. Ex. 3 at 10. Those injections delivered moderate pain relief. *Id.* at 3. On April 1, 2019, Dr. Rejai administered a second round of injections for "continued trouble with some movements such as abduction." *Id.* at 7. He also noted that Petitioner would follow a home exercise program, because her copay was a "substantial barrier" to formal PT. *Id.* at 7.

On August 12, 2019, Petitioner established a primary care relationship with a new provider, Faranak Fiedler, M.D. Ex. 7 at 2. She now reported bilateral arm pain following "MMR and Tdap vaccine[s], one in each arm in May 2018," as well as "morning stiffness" and "swelling of the hands." *Id.* An exam found decreased ROM, and tenderness over the deltoid tendons. *Id.* at 3. Dr. Fiedler recommended ibuprofen for pain management; and "consider[ed] new referral for ortho and pain management and possibly neurology." *Id.* at 4. However, those subjects were not discussed at four subsequent encounters with Dr. Fiedler. Ex. 10 at 7 – 36.

On December 3, 2020, Petitioner saw yet another new primary care provider, Aarentino Smith, NP, via telemedicine. Ex. 10 at 2. Her chief complaint was bilateral shoulder pain following "MMR and Tdap vaccines one in each arm." She recounted her prior course of treatment; aversion to surgery or treatment involving needles; and conservative management of her injuries which could reach 8/10 at the worst "flares" (e.g., during winter or with activity). *Id.* She also noted "referr[al] by the physical therapist friend to the Vaccine Injury Compensation Fund," and her active claim. *Id.* This telemedicine consult yielded a referral to PT. *Id.* at 5. At a December 23, 2020, initial evaluation at Montclair/ Active Method Physical Therapy, Petitioner provided a history of bilateral shoulder pain since 2018; she was unsure whether PT would be helpful; an exam found decreased ROM and weakness; and she was instructed on home exercises. Ex. 11 at 3 - 8. No further records have been filed.

## B.  Later Statements

In January 2019, Kaela Petty, a certified massage therapist and health educator, wrote the following:

To whom it may concern:

Renee Byndloss has been my client for 4 years. Prior to May 2018, Renee received periodic massage therapy to address low-level back tension and stress relief. During this time, she showed no signs of acute or chronic injury, and she never reported acute pain before, after, or during our massage sessions.

Renee initially complained of inexplicable severe pain in both upper arms at her June 16, 2018, appointment. She stated at that time that she had been experiencing the pain consistently in varying degrees for approximately a month. The pain persisted through her next appointment on August 10, 2018. At that point, I understand Renee sought formal medical attention."

Ex. 2 at 1.[7]

In June 2020, Petitioner recalled that on May 7, 2018, her PCP Dr. Townsend confirmed her "excellent health," then "discussed that I was due for the MMR and Tdap vaccinations. Ex. 8 at ¶ 4. "[Dr. Townsend] warned me that I would experience pain and discomfort for some time after receiving the vaccinations, particularly as I would be receiving one injection in each arm." *Id.* After Petitioner "received one vaccination in [her] right arm and the other vaccination in [her] left arm," she suffered immediate and unusual "burning and aching pain in both arms beyond the typical soreness," but believed that it would resolve with time. *Id.* at ¶ 3. She also recalls reporting a history of injury "since the vaccinations in May" to Dr. Townsend in August 2018, but Dr. Townsend "never inform[ing] [her] of the inaccurate chart entry" indicating that she received both vaccinations in her left arm. *Id.* at ¶¶ 5, 7.

In January 2022, a coworker recalled that Petitioner was healthy and active until spring 2018, when she "complain[ed] that she got vaccinations in both arms." Ex. 15 at ¶¶ 3 – 5. The coworker repeatedly accompanied Petitioner on walks to a nearby pharmacy to buy icy-hot patches and ibuprofen. *Id.* at ¶ 5. The coworker recalled that Petitioner's pain persisted through spring, summer, and fall 2018. *Id.* at ¶ 11.

## IV.  Findings of Fact

### A. Vaccine Administration Sites

A petitioner asserting a SIRVA claim bears the burden of establishing the site of vaccine administration. Section 11(c)(1); 42 C.F.R. § 100.3(c)(10)(iii) (referring to "the shoulder *in which the* intramuscular vaccine *was administered*") (emphasis added). Every case depends on its own mix of evidence – including the presence or absence of contemporaneous vaccine administration records; any such record's format (e.g., handwritten or electronic); the petitioner and other individuals' subsequent recollections of events; when and where those recollections appear (e.g., within the context of medical records focused on diagnosis and treatment of the injury, versus affidavits prepared for litigation); and whether the petitioner has provided a logical explanation as to why any contemporaneous administration records are in fact incorrect.

---

[7] The massage therapist's statement is neither notarized nor sworn under penalty of perjury as permitted under 28 U.S.C.A. § 1746. *See also* Pet. Status Report filed June 3, 2021 (ECF No. 18) (confirming that the massage therapist "does not keep medical records").

Here, Respondent presumes the accuracy of the contemporaneous records which indicate the same-day, same-sided administration of the Tdap and MMR vaccines. Rule 4(c) Report at 7.[8] Petitioner does not raise any particular challenges to the accuracy of such records, but instead maintains that the overall weight of the evidence, including medical records and statements from later in time, support her contention that she received the two vaccines bilaterally. Brief at 4. Here, however, the overall mix of evidence on this question does not ultimately preponderate in Petitioner's favor.

First, I note that Petitioner's medical records are not wholly supportive of her situs contentions. Patient histories "in general, warrant consideration as trustworthy evidence… [as they] contain information supplied to… health professionals to facilitate diagnosis and treatment." *Cucuras*, 993 F.2d at 1528. But on her two first opportunities to discuss her shoulder injuries with Dr. Townsend, Petitioner made no mention at all of her vaccinations as related to onset. Rather, she only began to contend she had received the vaccines bilaterally over *five months* after the fact – a gap in time that distinguishes this case from one where a claimant not only reported pain closer to the date of vaccination, but also made representations about the situs issue that are consistent with what she now contends. Otherwise, providers to whom she reported bilateral vaccinations did not have any personal knowledge of the occurrence, or render any medical assessment that Petitioner's history was indeed accurate (e.g., that her injuries somehow seemed consistent with her report of bilateral vaccinations). In particular, Dr. Townsend had only *ordered* the vaccinations, but he did not administer or observe them.

Second, this is not a case where witness statements persuasively corroborate Petitioner's situs contentions. The fact witness statements at issue were generated even later in time. The massage therapist does not make any reference to vaccinations. The coworker was not present, and only recalls Petitioner's *report* of her vaccinations. And Petitioner recalls that her PCP instructed that she would receive one vaccination in each arm – but no contemporaneous records are consistent. I find no reason to doubt the sincerity of Petitioner's recollections – but they are not necessarily accurate. Overall, Petitioner has not presented sufficient evidence to rebut the contemporaneous vaccine administration records regarding situs.

---

[8] As noted above, the contemporaneous records indicate that both vaccines were administered in Petitioner's left, non-dominant arm. The Tdap vaccine was administered in the *deltoid*, and the MMR vaccine was administered (subcutaneously) in the *triceps*– therefore, at distinct administration sites on the same arm.

## B.  MMR Vaccine Administration Method

Respondent also presumes that the contemporaneous records are accurate in stating that the MMR vaccine was intended for and actually administered subcutaneously (and hence, could not fit the SIRVA requirement for method of administration). Rule 4(c) Report at 7 (citing 42 C.F.R. § 100.3(c)(10) for the proposition that SIRVA is an injury following a vaccine "intended for intramuscular administration"). Petitioner argues in response that these records "cannot be taken as fact." Brief at 6. But as noted above, Petitioner has not offered sufficient preponderant evidence to undermine the records' accuracy. Her case is also easily distinguishable from a case she cites in which the evidentiary record – including statements from the relevant medical *providers* – supported an *unintended* intramuscular administration of the MMR vaccine. Brief at 6, citing *Chappell-Strickland v. Sec'y of Health & Hum. Servs.*, No. 18-0396V, 2021 WL 610136 (Fed. Cl. Spec. Mstr. Jan. 27, 2021).[9] In contrast here, as Respondent notes, only the petitioner's legal briefing suggests that the MMR vaccine was not administered subcutaneously. Response at n. 1. Thus, her MMR vaccine could not be the basis for a Table SIRVA.

## C.  Injury Onset

Respondent also questioned the onset of Petitioner's bilateral shoulder pain in connection with the May 7, 2018, vaccinations. Rule 4(c) Report at 8; Response at 2 – 3, citing 42 C.F.R. §§ 100.3(a) and (c)(10)(ii). Respondent is not unreasonable in raising this issue, in light of Petitioner's initial delay in seeking formal medical treatment and her delay in identifying a potential cause for her injuries. *See, e.g.*, Ex. 3 at 33 (August 14, 2018, PCP record of extremity pain "x2 months" with "no particular triggers identified"); Ex. 5 at 2 (September 1, 2018, email to PCP, again not mentioning vaccinations or any specific onset period). This is problematic notwithstanding the later records in which Petitioner related her injuries back to her vaccinations. Overall, I find preponderant evidence that Petitioner's bilateral shoulder pain was not present *before* vaccination, and that it began at some time afterwards, before the mid-June 2018 massage therapy session – but not necessarily within 48 hours post-vaccination.[10]

---

[9] The *Chappell-Strickland* opinion also reviews that the Centers for Disease Control and Prevention ("CDC") recommends intramuscular vaccine administration into the deltoid, and subcutaneous vaccine administration into the triceps. *Chappell-Strickland*, 2021 WL 610136, at *4. Ms. Byndloss's vaccine administration records' conformance to the CDC guidance is consistent (and is thus another factor somewhat in favor of the records' accuracy).

[10] In light of the preceding factual findings regarding the vaccines' site and methods of administration, I find that a more specific onset determination is not necessary at this time.

### D. Injury Location

Respondent also contended that Petitioner's pain and reduced range of motion were not limited to her shoulders. Rule 4(c) Report at 7 – 8, citing 42 C.F.R. § 100.3(c)(10)(iii). Petitioner responds that pain in "the shoulder-adjacent musculature," including the biceps and triceps muscles, is not inconsistent with this Table SIRVA requirement – and otherwise, there is only one record suggesting that she "sometimes" had additional pain in her back and chest. Brief at 5. Petitioner's position is at least somewhat persuasive, especially based on the lack of further objection from Respondent. *See generally* Response. I find that Petitioner's injuries were limited to her bilateral shoulders. But I have rejected the allegation of a right-sided vaccine administration, and thus, any right-sided SIRVA. That finding also seems to endanger the feasibility of a left-sided SIRVA.

### Conclusion and Transfer Order

In light of the above factual findings, a claim for a right-sided Table SIRVA is not tenable – and therefore any such claim is **DISMISSED.**

Those findings do not mandate the outright dismissal of Petitioner's entire case, however, given the evidence of a left-sided Tdap vaccine administration. That vaccine could be the basis for a SIRVA – although the MMR vaccine, which was not likely administered intramuscularly, could not. In addition, the MMR vaccine could have caused a non-Table injury.

But overall, because of the case's age and complexity (specifically the evidence of *bilateral* shoulder pain), transfer out of SPU is appropriate.

**Pursuant to Vaccine Rule 3(d), the above-captioned case is hereby transferred out of SPU and reassigned to Special Master Daniel T. Horner. Further proceedings may be determined by Special Master Horner.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master